I thank Patrick J. Hannon v. ABCD Holdings, LLC, et al. Patrick J. Hannon v. ABCD Holdings, LLC, et al. Good morning, Your Honor. May it please the Court, my name is Matt Johnson from Divine Dillamant, and I'm here on behalf of the appellant, Patrick J. Hannon. I would ask for two minutes, to reserve two minutes of time for rebuttal please. You may. This court should vacate the Bankruptcy Court order and remand this case for further proceedings because the Bankruptcy Court erred as a matter of law when it found fraudulent intent by Mr. Hannon at the summaries judgment stage of this case. Mr. Hannon's appeal to this court is on narrow procedural grounds and dependent on the unique set of facts and circumstances peculiar to his case, as well as the strong policy in the Bankruptcy Court embodied by the Bankruptcy Code favoring discharges for debtors and a fresh start. We have a situation here where, as I understand it, it's undisputed that the forms he filled out and submitted were factually false. And the question is, you have one question on whether there was an oath, but then the other driving question is state of mind. Did he, was he aware there were faults in essence or recklessly disregarded it? Absolutely, Your Honor. What is, usually we have a competing narrative about how the error occurred. I could not tell from his argument below and from your brief what his, for this is a civil case after all, what's his narrative for how these falsities appeared? Certainly, Your Honor, the narrative has a couple of factors to it. First and foremost, Mr. Hanna was a small business owner, and as a small business owner often the personal expenses and business expenses are somewhat intertwined. There were some competing challenges in this case relative to access to records because the appellee in this case actually gained control of the business records. There was, frankly, just an inexperience with and a difficulty I believe in interpreting the forms. See, that one I don't see at all. Maybe I'm missing something because he did put on the forms expenses that the corporation had paid on his behalf that were personal. So he clearly seemed to understand that the form called for that, which if I'm correct would leave him to arguing that he was incorrect or erred innocently in knowing whether an expense was personal or not, not that he erred in failing to know that the form required its listing if it was personal. I think in all due respect and maybe giving the debtor slightly more credit in this case, I would be of the position that particularly debtors who have faced the financial difficulty of being in a bankruptcy that the forms, while perhaps to yourself and myself, are easy to fill out are not necessary. They're a little bit daunting for a debtor. And so there are a couple issues. One is the issue of he did mark that on the form that there were other funds used outside of the debtor in possession account. And I frankly would submit that that's indicia of his narrative of carelessness and non-intent and no intent to hide, deceive, move, hide assets or in some way deprive the estate of information. I would concede that the information was imperfect. If the reporting had been perfect, we wouldn't be here today, Your Honor. I would submit also, however, that almost any small business debtor faced with the scrutiny that this appellee put the debtor's reporting through would probably come up with challenges and errors and confusion. Here, though, we have a $2,500 expenditure for rent on his residence. And we have nothing in the record from him saying either that he forgot that he paid his rent or that he didn't think that was personal. We're just, there's no evidence at all as to why he didn't put that on the form. And as I said earlier, it seems to me he clearly knew that he was supposed to put personal expenses on the form because he did list some. So how are we to find, what is a jury to find about that without an explanation from him as to how he possibly didn't put that on the form? Well, and that's the $64 question. Our position would be that the jury does have to find that. And frankly, the jury may look at the evidence and conclude a fraudulent intent, but the jury also could look at all the mitigating factors and the circumstances around it and not find... Even in the absence of an explanation from him, whose mind they're trying to read about why he didn't put it on the form. Well, yes, and Your Honor, the point, he also indicated in affidavits before the bankruptcy court that he did not knowingly intend to make mistakes or fill the form out incorrectly. So some of the narrative is that he just didn't do it right. Bankruptcy court usually is the land of ultimate forgiveness, and often these forms in bankruptcy filings, large and small, are corrected, amended, adjusted. There's no dispute that it's not the model of precision, but the question really gets to the heart of it. Is there enough indicia to make the very large leap at the summary judgment stage that summary judgment is appropriate when one of the elements of that is a finding of fraudulent intent? And I would submit for this court that that's where the bankruptcy court got it wrong. There were competing narratives. There were competing affidavits. There was an affidavit from a CPA on behalf of Mr. Hannon that explained to small business debtors, particularly when there's expense items and the accrual-based accounting versus the cash accounting, that it can be very difficult for them to fill out these financial reports appropriately. The court appeared not to give that any weight. Now, ultimately, the court at trial may decide not to give that any weight, but that's not the standard of review at the summary judgment stage. The debtor is entitled to all inferences in his favor, and viewing the late and most favorable to the court. I had the same problem that Judge Cayetta's question raises, which is, yes, it's summary judgment. Intent, usually we don't grant summary judgment where you've got an issue of intent that's somehow supported, but I kept looking for what's the support? I just didn't do it right in the face of evidence that you couldn't make that kind of mistake. It doesn't really carry a lot. So what's the plausible evidence that you would say the jury has to weigh that, other than just, hey, I didn't do it right? But I didn't do it right. It's not fraudulent intent or not intent. No, but what supports the notion that I didn't do it right? Because he did do it right. He did partially right. Right, correct. Yeah, he did his best, frankly, and that's his position, what he did his best to try to do it. The evidence the jury would hear when he did not try to conceal anything, I think it would be important to understand that the expenses at issue are really expenses that his company paid to him, and that when you aggregate those expenses versus what he projected at the start of his case would be his monthly expenses, they were still lower than what he projected. These are not the sets of circumstances where someone is taking a valuable asset, hiding it, making it difficult for the creditors to find that. Let me drill into this some more. Suppose he bought his wife a $20,000 fur coat the day before he signed this form. On this record, should that go to a jury? With no explanation from him that he thought that the fur coat was not a personal expense. Your Honor, I think absent a showing of a clear and unmistakable showing of intent to deceive the court and hide valuable assets from the court, any claim that has the fraudulent intent as a material component of the charge has to go to the jury. So you're saying absent a confession from him because it's intent, it has to go to the jury? I do, and I believe if you look at the First Circuit case law where the court has upheld the summary judgment, there's always an indicia or an element of bad doing, hiding assets, taking assets, being obstinate and not being helpful and not trying to correct mistakes. Just so I get this, I think you're taking a position somewhat narrower than there has to be a confession. If I understood what you're saying, you can't deduce just from the failure to have reported items, no matter how substantial the non-reporting is, or at least even if it's substantial non-reporting, that it was with a reckless indifference to the truth. There's got to be some plus factor in order to say summary judgment. Yes, Your Honor. I see my time is up, or I have 20 more seconds. That's correct, Your Honor. The issue is there has to be some plus factor beyond the fact of making mistakes. The code, there is no bright line test that says you get two mistakes and you're free, four mistakes, you're over the line. It's always a circumstantial issue, and it's always based on the facts and circumstances. I believe the Manning Court's decision out of the Northern District of Indiana is particularly instructive on that point because there is the same set of circumstances. The debtor made multiple mistakes. The court heard the evidence, heard from the debtor, listened to the narrative, and ultimately concluded that the debtor did not show fraudulent intent. And that would be our position here today, that he's entitled to that hearing before such a draconian measure as a denial of discharge. Thank you. Thank you, Your Honor. I want to start with the question regarding the competing narrative. There is no competing narrative here. Mr. Hannon filed, within the course of the summary judgment pleadings, three separate affidavits. Not one of them said anything to the effect of, oh, yes, I said under oath that I only received $1,400 from these companies, but in reality I received $8,500 or more. And here's why. Here's the mistake I made. Here's why I thought I only received $1,400. Taking it forward, July, August, September, on each of those monthly reports, Hannon stated zero. And yet, as was clearly shown, what Mr. Hannon was doing was he was taking the debit card from these companies and just using them for his own expenses. Can we tell from the record the dates of the MORs? The dates they were submitted? The dates he filled them out and submitted. We cannot. The only evidence on the record, the bankruptcy court's qualifications were that the bankruptcy court commented in the decision that the U.S. trustee had filed a motion to convert or dismiss based in part on Mr. Hannon filing the monthly reports sporadically and untimely. So for April, June, July, August, September of 2012, was he filing – can we tell from the record whether he was filing reports during that period, seriatim, even if episodic, or did he file them all in a bunch after that period? And I ask because it paints a little bit different picture. If he's sitting there on, you know, June 30, filling out the form having just two days earlier done a $2,500 check to his landlord. It's not clear from the record when they were filled out or when they were filed, other than at least some of them were filed late. Okay. The – On the point about a plus factor, if you were to, beyond the misreporting or the failure to report substantial items, which I understand the record shows and may be enough, is there any – what else would you point to that would lead one to conclude there had to have been a reckless indifference to the truth and no reasonable jury could conclude otherwise? Yes, Your Honor. I think in the cases, the different lines of cases, it's very clear that summary judgment can be awarded on intent on a case like this. And there's – looking at Donahue and Daniels and other lines and other cases along those lines. Or also itself that the other side relies very heavily on states explicitly, under some circumstances, summary judgment can be awarded. Now, the two lines of cases, I think, really differ in two aspects. Where you – where summary judgment is not awarded, you tend to have somewhat of a small, minor infraction combined with an effort by the debtor to fix it. Very quickly acknowledge, oh, yes, this is a mistake. Correct the schedule, et cetera. Neither of those factors are present here. First of all, this is not a minor affair. Mr. Hannon filled out only five monthly reports in the time that he was in Chapter 11. All five were false. Three of them said, I received nothing, when it was clear that there just was no interruption in the activity. He was just pretending he was – that he was going along with the – when in reality the majority of his expenses were being paid through these companies, through this debit card that had absolutely no transparency from the trustee or the debtors. Moving on from that, I want to focus on how Hannon reacted when this was pointed out to him. Now, Mr. Hannon, I think in various – I think he amended his schedules three times over the course of this case. Not once did he address the monthly reports. What happened in this case was the forensic analysis was done. It came up with an opinion from the forensic accountant that during the term of his bankruptcy, Mr. Hannon took $99,000 in cash and expenses from these companies in five months and reported $4,000. Now, not all those – not all 99,000 of those are in dispute at this point, but a substantial portion are. And how did Mr. Hannon respond? He didn't respond by saying, oh, oops, I made a mistake. Let me try to fix that. He denied the complaint when it was first filed. When the summary judgment motion came down, the first thing he did was try to blame an employee. He said, well, there's another employee with one of these debit cards. Turns out there were just a few hundred dollars in gasoline charges. The second thing he did was he said, oh, well, but the entire month of May, someone was looking to purchase the property, purchase the businesses, took control as kind of a due diligence, and had control over all the finances. Well, that proved not to be true based on the record, and that claim was abandoned. Then the third argument was, well, the forensic accountant was no good, biased. And then we went to a hearing. Mr. Hannon looked Judge Hillman in the eye and said, all these charges are business-related. I can prove it, 99.9%. Well, Judge Hillman called his bluff. And Judge Hillman said, fine, account for them all. He bent over backwards to give Mr. Hannon a chance to show that, oh, no, these were legitimate reports. So, I mean, after his bluff was called, there weren't 99.9% business expenses. And he had to acknowledge that. But even in acknowledging there were $20-some-thousand in personal expenses that went unreported over a five-month period of time, even in acknowledging that, he continued to play games with his account. He claimed that about $2,000, $2,000, $3,000 was related to two beach houses that he owned that he's now saying were really client entertainment expenses, which were directly contradictory to sworn testimony he had made in his 341 hearing. He further went and, in his haste to try to make the accounting look as good as possible, took three out of – he only identified eight payments that the companies had made for him. And the entire – and we're now admitting, I think, to about 40, 50 of them. But he admitted to eight. Three of them, in his later accounting, he messed up. Sort of an entangled web we weave. Couldn't catch up with his own lies. And three of them, he later reclassified as business expenses, even though he had put them on his monthly operating reports as these are personal expenses the company paid. And then finally, he admitted that, well, the company paid $4,000 that went to his wife and tried to make the argument, oh, I put those in my monthly operating reports. But, you know, as the judge carefully scanned the record, they didn't appear. So rather than present as a debtor who, in recognizing, oh, I made a mistake, and the competing narrative being, okay, here's why I thought that these were okay, Mr. Hannan instead, kicking and screaming, says no, no, no, no, continues his path of deception all the way up to this court and offers absolutely no support whatsoever that any of these were innocent mistakes. And it's clear they weren't. He would be entitled to proceed with trial against the motion for summary judgment under these circumstances only if there's a plausible inference that his mistakes were innocent, his mistakes were not fraudulent, or at the very least with reckless indifference to the truth. There is no such plausible inference in this case. The only plausible inference is that Mr. Hannan knew what was going on. He knew May, June, July, August, September. When he was writing down under oath that what his offenses were, he knew what he was writing was not true. Thank you. Thank you. In rebuttal, the opposing counsel touched on the Verasso case. I do believe the Verasso case is an important one to take a look at. For the context of the balancing the court has to be done in that case, the court looked at the volume of underreporting or errors and said it was very small in comparison to the overall amount at stake. In this case, Mr. Hannan has liabilities in excess of $10 million. And even crediting the other side with their argument, it's a very small amount in dispute, an amount in dispute that still does not exceed the monthly operating expenses that Mr. Hannan outlined at the start of the case. So there was no gain to be had. There was no windfall that Mr. Hannan took out of this case. He operated and lived, even though he didn't report it as well as he could, he operated and lived under the budget he proposed. How do you address the intention that there was false narratives being put forth by your client as an explanation of why there was this gap for such a long period of time? I believe that the affidavits he was presenting, the best evidence available to him, and then to the extent he couldn't further prove that up, he moved on from that. But, again, the evidence was he – It's just the thing would be that the way you're suggesting is just sort of it was a mistake. You would have thought it was a mistake. That would have occurred to him earlier than it did. I know it's not an excuse, but also there was a stiffing period of time Mr. Hannan was unrepresented by counsel as he's doing this. So what the court and I may consider to understand the broader context was not necessarily something Mr. Hannan might have understood. So part of the reasoning of this and part of that issue is that for periods of time he was on his own trying to do this, not to mention there were bank records and other records that he did not have access to. And he did provide explanations. It's imperfect, but he did at Appendix 401-09, you can see Mr. Hannan's attempts to walk through exactly what he did. He didn't try to color things. I see my time is up. But he didn't try to color things. He said what he knew the evidence was. Even if he said he didn't know, he said he didn't know. I submit that's not intent. Thank you.